Cynthia A. Murray
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, New York 10005
Tel.: (212) 973-8000
Email: cmurray@schnader.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN SOCIETY OF NEUROIMAGING, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>-against-<br><br>WILEY PERIODICALS, INC.,<br><br>　　　　　　　　　Defendant. | Civil Action No.<br><br>**COMPLAINT AND<br>DEMAND FOR JURY** |

Plaintiff American Society of Neuroimaging, Inc., by and through its attorneys, Schnader Harrison Segal & Lewis LLP, as and for its complaint herein, alleges as follows:

## THE PARTIES

1. The American Society of Neuroimaging, Inc. ("Plaintiff") is a non-profit corporation under the laws of the State of Minnesota with its principal place of business located at 1935 County Road B2, Suite 165, Roseville, Minnesota.

2. Upon information and belief, Defendant Wiley Periodicals, Inc. ("Defendant") is a Delaware corporation with its principal place of business located at 111 River Street, Hoboken, New Jersey.

## JURISDICTION AND VENUE

3. The Court has proper diversity jurisdiction, pursuant to 28 U.S.C.

§ 1332(a)(1), because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and this civil action is between citizens of different states.

4. Venue is proper in this district pursuant to the parties' written agreement entered into and made as of December 18, 2017 (the "Publishing Agreement") which provides, *inter alia*, that "[t]his Agreement and any dispute or claim arising out of or in connection with it (including non-contractual disputes or claims) . . . shall be subject to the exclusive jurisdiction of the courts of New York County, New York."

5. Plaintiff files this action, pursuant to 28 U.S.C. § 2201, seeking a declaration regarding the rights and legal relations between Plaintiff and Defendant in connection the Publishing Agreement, as more fully described below.

6. Plaintiff further seeks specific performance of certain of Defendant's contractual obligations pursuant to the Publishing Agreement.

## BACKGROUND

*The Parties*

7. Plaintiff is the owner of a professional medical journal entitled *The Journal of Neuroimaging* (the "Journal").

8. Defendant is a publishing company, whose publications include multiple academic medical journals.

*The Publishing Agreement*

9. On or about December 18, 2017, Plaintiff and Defendant entered into the Publishing Agreement whereby Plaintiff granted Defendant the exclusive right to publish and distribute the Journal on the terms set forth in the Publishing Agreement.

10. The initial term of the Publishing Agreement started with and for calendar

year 2019, and remained in effect for a period of five (5) years (the "Initial Term"), *i.e.*, expiring on December 31, 2023.

11. Section 13.1 of the Publishing Agreement provides that "[t]he Agreement will then be automatically renewed on the same terms and conditions for succeeding one calendar publication year periods ('Renewal Term' together with the initial Term the 'Term') unless and until terminated by either party giving not less than 12 months' notice in writing to the other party prior to the scheduled expiration of the Initial Term or any Renewal Term."

12. Section 13.2 of the Publishing Agreement provides that "[i]n the event that [Plaintiff] gives notice of non-renewal in accordance with Section 13.1 and decide[s] to offer publication rights to another publisher, then [Plaintiff] shall in good faith notify [Defendant] of the financial terms being offered. If within 60 days [Defendant] fails to offer the same or better financial terms, the notice will come into effect. If [Defendant] succeeds in offering the same or better financial terms, then this Agreement will be amended and deemed to be renewed on such terms."

13. Section 13.7 of the Publishing Agreement provides that "[u]pon termination of this Agreement, [Defendant] will comply with the then current Transfer Code of Practice in connection with the transfer of subscriber data and Journal content and/or work in progress to any new publisher."

*The Termination Notice*

14. Throughout the duration of the Publishing Agreement, Plaintiff performed all of its duties and obligations in accordance with the Publishing Agreement.

15. By email dated December 3, 2021, Plaintiff provided written notice to Defendant that Plaintiff had received an offer from another publisher, and consequently intended to terminate the Publishing Agreement at the end of the Initial Term.

16. In its December 3, 2021 email, Plaintiff requested confirmation from Defendant that it agreed that notice of termination had been given, and the Publishing Agreement would be terminated at the end of the Initial Term.

17. Defendant did not respond to Plaintiff's email dated December 3, 2021 for six weeks.

18. Finally, on January 14, 2022, Defendant responded by email to Plaintiff that it did not agree that Plaintiff had satisfied the notice requirement of Publishing Agreement, because Plaintiff had not notified Defendant of the financial terms offered by the other publisher.

19. On January 20, 2022, Plaintiff responded by email, setting forth the financial terms offered to Plaintiff from another publisher (the "Competing Offer").

20. The Competing Offer proposed superior financial terms relating to the Journal itself, and also offered to establish a second journal, referred to as a cascade journal, with an additional annual editorial stipend and associated royalties.

21. On March 8, 2022, Defendant responded by email, purporting to offer Plaintiff the same or better financial terms as the financial terms in the Competing Offer for the Journal only, and purporting to renew the Publishing Agreement for five years, *i.e.*, through December 31, 2028.

4

22. While Defendant's counteroffer included similar financial terms as the Competing Offer for editorial support and royalties for the Journal plus a small one-time payment, it did not include, or offer any terms relating to, the publication of a cascade journal.

23. On May 2, 2022, Plaintiff sent an email to Defendant explaining the reasons why Defendant's proposed offer did not, in fact, offer the same or better financial terms than the financial terms offered by the Competing Offer and requested that Defendant confirm its willingness to assist in the transition of the Journal to a new publisher.

24. Despite having failed to offer the same or better financial terms than the financial terms in the Competing Offer, Defendant has failed and refused to acknowledge that Plaintiff's notice of termination is effective such that the Publishing Agreement will expire as of December 31, 2023.

25. Defendant has further failed and refused to confirm that it will comply with obligations under the Publishing Agreement relating to, *inter alia*, the transfer of subscriber data and Journal content and/or work in progress to a new publisher.

## FIRST CLAIM
(Declaratory Judgment)

26. Plaintiff repeats and realleges paragraphs 1 through 25 of this complaint as if fully set forth herein.

27. The Publishing Agreement is a valid and enforceable contract.

28. Plaintiff fully performed all of its duties and obligations in accordance with the Publishing Agreement.

29. Plaintiff's January 20, 2022 email fully complied with the notice requirements for termination of the Publishing Agreement and notified Defendant of the financial terms of the Competing Offer.

5

30. Defendant contends that, pursuant to Section 13.2 of the Publishing Agreement, it has offered Plaintiff the same or better financial terms than the financial terms in the Competing Offer and that the Publishing Agreement has been renewed for a five-year period, expiring as of December 31, 2028.

31. Plaintiff contends that more than sixty (60) days have elapsed since Plaintiff provided notice to Defendant of the Competing Offer, and Defendant has failed to offer the same or better financial terms than the financial terms in the Competing Offer.

32. Consequently, Plaintiff contends that the notice of termination pursuant to Section 13.2 of the Publishing Agreement is effective, and the Publishing Agreement will terminate at the end of the Initial Term on December 31, 2023.

33. Declaratory relief is appropriate in this case because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought concerning (i) whether the Termination Notice complied with the requirements of the Publishing Agreement; (ii) whether Defendant offered financial terms the same or better than the financial terms in the Competing Offer; (iii) whether the Publishing Agreement will terminate after the Initial Term on December 31, 2023; and (iv) whether Plaintiff may enter negotiations with a new publisher to finalize the terms of the Competing Offer.

34. Plaintiff requests that the Court issue a declaration that (i) the Termination Notice complied with the requirements of the Publishing Agreement; (ii) Defendant failed to offer financial terms the same or better than the financial terms in the Competing Offer; (iii) the Publishing Agreement will terminate after the Initial Term on December 31, 2023; and (iv) Plaintiff may enter negotiations with a new publisher to finalize the terms of the Competing Offer.

## SECOND CLAIM
### (Specific Performance)

35. Plaintiff repeats and realleges paragraphs 1 through 34 of this complaint as if fully set forth herein.

36. The Publishing Agreement is a valid and enforceable contract.

37. Plaintiff fully performed all of its duties and obligations in accordance with the Publishing Agreement.

38. Termination of the Publishing Agreement triggers certain obligations of the Parties including, but not limited to, Defendant's adherence with its obligation pursuant to Section 13.7 to "comply with the then-current Transfer Code of Practice in connection with the transfer of subscriber data and Journal content and/or work in progress to any new publisher."

39. Plaintiff has no adequate remedy at law.

40. A judgment of specific performance directing Defendant to perform its obligations under the Publishing Agreement will serve the ends of justice.

41. Given that such information cannot readily be replicated and is essential to Plaintiff's ability to work successfully with a new publisher, monetary damages would not be sufficient to compensate Plaintiff fully for any loss resulting from Defendant's non-compliance.

42. Accordingly, Plaintiff demands judgment granting specific performance of the Publishing Agreement by ordering Defendant to perform its obligations under the Publishing Agreement, including the transfer of the subscriber data and Journal content and/or work in progress to any new publisher.

WHEREFORE, Plaintiff American Society of Neuroimaging, Inc. demands judgment as follows:

A. On its First Claim, a declaratory judgment that: (i) the Termination Notice complied with the requirements of the Publishing Agreement; (ii) Defendant failed to offer financial terms the same or better than the financial terms in the Competing Offer; and (iii) the Publishing Agreement will terminate after the Initial Term on December 31, 2023, and (iv) Plaintiff may enter negotiations with a new publisher to finalize the terms of the Competing Offer.

B. On its Second Claim, directing Defendant to specifically perform its obligations under the Publishing Agreement, including the transfer of the subscriber data and Journal content and/or work in progress to any new publisher;

C. Awarding recoverable costs and fees; and

D. Such other and further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff the American Society of Neuroimaging, Inc. demands a trial by jury in this action.

Dated: New York, New York
June 22, 2022

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _____
Cynthia A. Murray
140 Broadway, Suite 3100
New York, New York 10005
Phone: (212) 973-8000
Fax: (212) 972-8798
Email: cmurray@schnader.com

*Attorneys for Plaintiff*